# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL T. TORRES, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 1:19-cv-00067-SAB <br><br> ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL <br><br> (ECF Nos. 21, 27) |

Plaintiff Michael T. Torres ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from osteoarthritis of the bilateral knees, genu varum deformity, and obesity. For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on January 21, 2016. (AR 53.) Plaintiff's applications were initially denied on March

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 8, 23.)

11, 2016, and denied upon reconsideration on March 29, 2016. (AR 76-80, 83-87.) Plaintiff requested and received a hearing before Administrative Law Judge James P. Nguyen ("the ALJ"). Plaintiff appeared for a hearing on December 19, 2017. (AR 33-52.) On March 6, 2018, the ALJ found that Plaintiff was not disabled. (AR 14-24.) The Appeals Council denied Plaintiff's request for review on December 31, 2018. (AR 1-3.)

### A. Hearing Testimony

Plaintiff testified at the December 19, 2017 hearing with counsel. (AR 37-46.) Plaintiff was born on February 26, 1978. (AR 37.) He was 5' 9" tall and weighed 340 pounds at the time of the hearing. (AR 37.) Plaintiff is right handed. (AR 37.) He lived with his girlfriend and his father. (AR 37.) Plaintiff completed the twelfth grade. (AR 38.)

Plaintiff has worked part-time as an in home support provider for a friend. (AR 38, 42.) He stopped working because he was no longer able to pick up his friend. (AR 42.) When he was working, he would take her out of bed, change her, bathe her, and push her wheelchair. (AR 44.) He is no longer able to do those things due to his knee pain. (AR 44.)

Plaintiff has osteoarthritis in his knees with the right knee worse than the left. (AR 38-39.) Plaintiff had an injection of a gel into his knees about a year and a half ago but it did not help. (AR 39.) He also attended physical therapy but that also did not help at all. (AR 39.) Plaintiff has not been offered any other treatment. (AR 39.) Plaintiff was not taking any pain medication. (AR 40.) The medication they gave him did not work. (AR 40.) Plaintiff tried Motrin and Norco. (AR 40.) He wanted something stronger to help with the pain. (AR 40, 45.) Plaintiff did get some pain pills when he went to the emergency room, but has not had any pain medication since then. (AR 40.)

Plaintiff just started seeing a primary doctor. (AR 41.) She did not prescribe any medication, but referred him to an orthopedic doctor. (AR 41.) Plaintiff also has a deformity in his legs that he has had his entire life. (AR 41.) It only affects his knee pain. (AR 41.) The deformity causes his legs to bow a little. (AR 41.) Plaintiff has no other physical problems. (AR 42.) He took an anti-inflammatory medication for his knees. (AR 42.) Plaintiff requested surgery for his knees, but the doctor told him that he is too young for knee replacement surgery.

2

(AR 44.) He was told he has to wait until he is 60 to 65 years old. (AR 45.)

Plaintiff does the grocery shopping. (AR 37.) He goes with his girlfriend and waits at the pharmacy while she does the shopping due to his knees. (AR 37-38.) Plaintiff is able to shower, make the bed, and prepare meals for himself. (AR 38.) Plaintiff has no hobbies and does not spend time with friends. (AR 43.) During the day he is at home with his father and his girlfriend. (AR 43.) Plaintiff's girlfriend does all the cleaning. (AR 46.) He does not do yard work and he stopped taking his dogs for a walk because he cannot walk anymore. (AR 46.)

Plaintiff is unable to work because he cannot sit very long. (AR 42-43.) After sitting for ten to fifteen minutes, he starts getting stiffness and pain. (AR 43.) Then he will stretch for ten to fifteen minutes and sit down again. (AR 43.) He keeps his knees elevated during the day. (AR 43.)

Dr. Heidi Paul, a vocational expert, also testified at the hearing. (AR 46-50.)

**B.     ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2017.
- Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of August 23, 2013, through his date last insured of December 31, 2017.
- Through the date last insured, Plaintiff had the following severe impairments: osteoarthritis of the bilateral knees, genu varum deformity, and obesity.
- Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.
- Through the date last insured, Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR § 404.1567(b) with the following limitations. Plaintiff can stand and walk four hours during an eight hour day; can occasionally climb ramps and stairs but never climb ladders, ropes, and scaffolds; and can occasionally stoop, kneel, crouch, and crawl. He should avoid concentrated exposure to extreme cold and should avoid working around unprotected heavy machinery or unprotected heights.

1. - Plaintiff has no past relevant work.
2. - Through the date last insured, considering Plaintiff's age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.
3. - Plaintiff was not under a disability as defined in the Social Security Act at any time from August 23, 2013, the alleged onset date through December 31, 2017, the date last insured.

(AR 19-23.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

**IV.**

**DISCUSSION AND ANALYSIS**

Plaintiff contends that the ALJ erred in discrediting his symptom testimony and failing to address the factors set forth in 20 C.F.R. § 404.1529 and by not considering Plaintiff's obesity throughout the sequential disability analysis. Defendant counters that the ALJ did not solely rely on the medical evidence in discounting Plaintiff's symptom testimony. Defendant argues that the ALJ also noted Plaintiff's conservative treatment, that Plaintiff was not taking pain medication or participating in a significant pain management program, Plaintiff had improved with treatment, and his independent activities of daily living. Defendant also argues that the ALJ

properly considered Plaintiff's obesity throughout the sequential evaluation process and Plaintiff has failed to point to any evidence or testimony that would negate the ALJ's reasoning.

### A. The ALJ Provided Clear and Convincing Reasons for Rejecting Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ merely summarized Plaintiff's testimony without providing any credibility analysis at all. Further, Plaintiff contends that the ALJ erred by rejecting Plaintiff's testimony based on the objective medical evidence and wrongly drew negative inferences based on his non-compliance, failure to seek other means to alleviate his pain, and his overall conservative treatment. Plaintiff states that the ALJ erred by failing to consider the seven facts set forth in 20 C.F.R. § 404.1529 when assessing the credibility of his pain symptoms.

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Then "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Brown-Hunter v. Colvin, 806 F.3d 487, 488–89 (9th Cir. 2015). "The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted). Factors that may be considered in assessing a

claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, 504 F.3d at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . .." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284). The district court is constrained to review those reasons that the ALJ provided in finding the claimant's testimony not credible. Brown-Hunter, 806 F.3d at 492.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision. (AR 22.)

Plaintiff argues that the ALJ merely summarized the medical evidence without providing reasons to reject his testimony. However, as Defendant points out, the ALJ did provide the reasons to discredit Plaintiff's testimony in the opinion. Specifically, the ALJ noted that Plaintiff stated that he was unable to work due to pain in his knees and has tried physical therapy, injections, and pain medication that did not help. (AR 20.) The ALJ found that although Plaintiff reported that he did not receive any improvement with physical therapy, the records noted that he had increased flexibility and was able to increase his muscle resistance with treatment. (AR 21.) The ALJ also found that Plaintiff did not perform his exercises as prescribed. (AR 21.) Further, the ALJ found that Plaintiff had not been taking pain medication for months and had not been prescribed stronger pain medication on a regular basis. (AR 21.) Finally, the ALJ found that the evidence in the medical record did not support Plaintiff's complaints of disabling pain. (AR 21.)

7

1. **Whether the ALJ Failed to Adequately Address the Factors Set Forth in Section 404.1529(c)**

Plaintiff argues that the ALJ erred by failing to address each of the factors set forth in 20 C.F.R. § 404.1529(c) At the relevant time, Section 404.1529 stated "[i]n evaluating the intensity and persistence of your symptoms, we consider all of the available evidence, including your history, the signs and laboratory findings, and statements from you, your treating or nontreating source, or other persons about how your symptoms affect you." 20 C.F.R. § 404.1529(b)(1) (2017).

> Factors relevant to your symptoms, such as pain, which we will consider include:
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3) (2017). However, an ALJ is not required to specifically discuss each of the factors in the opinion, but the opinion should include sufficient information that the reviewing court does not need to speculate on the grounds for rejection. Willyard v. Colvin, 633 F. App'x 369, 370 (9th Cir. 2015).

Here, the ALJ considered that Plaintiff testified that he has worse pain in his right knee than the left and cannot work due to the arthritis in his knees. (AR 21.) Plaintiff had tried physical therapy and injections that did not help his pain. (AR 20.) His doctors had advised against surgery due to his age. (AR 20.) The ALJ considered that Plaintiff testified he spent most of the day resting, his limited daily activities, and that cannot sit for long periods of time due to pain,[2] and he needs to elevate his legs. (AR 21.) The ALJ also considered that Plaintiff had only received limited, conservative treatment and was not taking any pain medication. (AR

---
[2] The court notes that the statement actually states, "The claimant stated that he sit for long periods because of pain." (AR 21.) However, it is apparent that this is a typographical error and the ALJ meant that Plaintiff cannot sit. (AR 42-43.)

8

21, 22.) The Court finds that the ALJ properly considered the factors listed in section 404.1529(c)(3). The ALJ pointed to the specific testimony that he found not to be credible, therefore the Court considers whether the ALJ provided clear and convincing reasons for the credibility finding that are supported by substantial evidence in the record. Brown-Hunter, 806 F.3d at 489.

2.  Medical Treatment

The ALJ considered that Plaintiff had received injections and physical therapy and had shown decreased pain and increased flexibility with treatment. (AR 21- 22, 316-323.) The ALJ also considered that Plaintiff had not tried any other treatment, such as aqua therapy, weight loss programs, acupuncture, or other conservative treatment. (AR 21.) Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of the impairment. Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007). However, courts do find that physical therapy and steroid injections that do not alleviate the condition do not support an adverse credibility finding. Hydat Yang v. Colvin, No. CV 14-2138-PLA, 2015 WL 248056, at *6 (C.D. Cal. Jan. 20, 2015). Further, the Ninth Circuit has stated that "we doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment." Garrison v. Colvin, 759 F.3d 995, 1015, n.20 (9th Cir. 2014).

The medical record demonstrates that Plaintiff received an injection in this right knee on March 8, 2015. (AR 282.) On April 8, 2015, Plaintiff reported that his right knee was doing a little better and requested and received an injection in his left knee. (AR 281.) On July 27, 2015, Plaintiff returned and reported that the injections did not help much at all. (AR 280.)

As to his physical therapy, the record shows that Plaintiff had an evaluation on December 21, 2015, and reported that his knee pain was 7/10 at its worse and constantly. (AR 317.) Plaintiff's knee flexion was 4, 5 with range of motion 90/110. (AR 317.) His knee extension was 4, 5 and range of motion was -5/0. (AR 317.) He had pain at the end-range of flexion and extension and ambulated with a decreased stance phase on the right lower extremity. (AR 318, 319.)

On December 22, and December 28, 2015, Plaintiff reported stiffness and pain of 5/10 in

the right knee. (AR 323.) He had limited knee flexion due to pain at the end range and tightness in the quads and hamstring muscles, but had decreased symptoms after stretches. (AR 323.) Plaintiff required voice commands during his standing exercises for body mechanics. (AR 323.)

On December 30, 2015, Plaintiff denied having an knee pain but complained of tightness. (AR 322.) Plaintiff was able to increase his exercises but struggled during the straight leg raise. (AR 322.) He needed reminders on his exercise program as he was unable to recall his prescribed exercises. (AR 322.)

On January 4, 2016, Plaintiff reported that his pain was 5/10 in his right knee and that he was experiencing pain while ambulating. (AR 322.) He had mild tenderness to palpation over the right patella tendon, but responded well to moderate pressure with a slight decrease in pain. (AR 322.) He was able to perform all exercises with no adverse effects, but did require mild voice commands to instruct on proper body mechanics to ensure he was performing at a safe level. (AR 322.)

On January 7, 2016, Plaintiff reported that he had pain of 4/10 with tightness down the kneecap. (AR 321-322.) He had tenderness to palpation along the patellar tendon. (AR 322.) He performed general patellar mobilizations with no noted restrictions found. (AR 322.) He was able to exercises for quadricep strengthening with no complaints of pain. (AR 322.)

On January 13, 2016, Plaintiff reported stiffness in his knees, but no pain. (AR 321.) He was to have injections the following Monday with two more injections to follow.[3] (AR 321.) He had mild tenderness to the medial aspect of his knee, but no tenderness to the posterior knee along the hamstring tendon. (AR 321.) He was able to increase his resistance without an exacerbation of his symptoms. (AR 321.)

On January 14, 2016, Plaintiff presented with soft tissue restrictions to the distal right quads and distal IT band but displayed improved flexibility. (AR 321.)

Although Plaintiff reported little to no pain relief with injections, he did report decreased pain with physical therapy and showed improved flexibility. The subsequent medical record

---

[3] The record reflects that Plaintiff was seen on January 19, 2016, but no procedures were performed and there is no physical examination recorded. (AR 298-299.)

shows that on October 26, 2016, Plaintiff was seen complaining of swelling in both legs (AR 328.) The records indicates that Plaintiff has a history of knee pain and injections, but the concerns noted are related to cardiac issues and Plaintiff was referred to cardiology and pulmonary. (AR 328.)

On January 7, 2017, Plaintiff was seen with a cough and had a generally normal examination. (AR 329.)

The first indications in the medical record that Plaintiff was seen again due to his knees was on June 11, 2017, when he reported that his right knee felt tight. (AR 324.) He stated that he had a large pop in his knee a few days prior and was having pain and requested pain medication. (AR 324.) On examination, Plaintiff had normal range of motion and strength with no tenderness, swelling or deformity. (AR 326.) He was prescribed acetaminophen with hydrocodone and Motrin. (AR 327.)

Plaintiff was seen on July 17, 2017, complaining that his knees always hurt and the right was worse than the left and x-rays were ordered. (AR 337.)

Although, the evidence in the record does not support the ALJ's finding that Plaintiff had only received conservative treatment, there is evidence that Plaintiff's knee pain responded well to the physical therapy as he was discharged on January 14, 2016, and his next visit for complaints of knee pain occurred on June 11, 2017. A condition that can be effectively controlled with medication is not disabling for the purposes of determining eligibility for Social Security Insurance benefits. Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006). Substantial evidence supports the ALJ's finding that Plaintiff's knee pain responded well to physical therapy and medication. The ALJ properly considered that Plaintiff's complaint regarding the severity of his symptoms was inconsistent with his conservative treatment.

### 3. Failure to Seek Treatment or Follow Treatment Plan

The ALJ considered that Plaintiff only participated in physical therapy for about a month (AR 22, 316-323), and the treatment records indicate that Plaintiff was unable to remember his exercises which suggested that he did not perform his exercises at home, (AR 21, 322). The ALJ

may properly rely on an unexplained or inadequately explained failure to follow a prescribed course of treatment. Molina, 674 F.3d at 1113. There is substantial evidence in the record to support the ALJ's finding that Plaintiff did not comply with his physical therapy treatment plan.

Further, Plaintiff testified that he had not taken pain medication in months and not been prescribed stronger pain medication on a consistent basis. (AR 21, 40, 41.) Despite not taking pain medication, Plaintiff was independent in his activities of daily living. (AR 21, 38, 31, 40.) While Plaintiff stated that he was not taking pain medication because it did not help him (AR 40), the ALJ could reasonably find that the fact that Plaintiff was not taking pain medication was inconsistent with his allegations of disabling pain. Further, although Plaintiff testified that he wanted stronger pain medication and had been provided stronger medication at the emergency room, there is no evidence that Plaintiff attempted to obtain stronger pain medication. (AR 40.) An "unexplained, or inadequately explained, failure to seek treatment" may be the basis for an adverse credibility finding. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ properly considered that Plaintiff was not taking pain medication.

### 4. Inconsistency with Medical Record

The ALJ also considered that Plaintiff stated that physical therapy did not help his knees at all, but the treatment records indicated that he had improved flexibility with exercises and was able to increase his muscle resistance. (AR 21, 39, 316-323.) Plaintiff's October 2014 x-ray showed minimal narrowing of the knee joint spaces and genu varum deformity, and there was no diagnostic evidence showing severe joint space deterioration. (AR 21, 273, 284.) The ALJ considered that although Plaintiff had some tenderness on examination, he had generally normal physical examinations with good range of motion and full motor strength. (AR 21, 280, 281, 282, 284.) As discussed above, Plaintiff showed improvement with physical therapy and the record reflects a period of more than a year with no treatment for Plaintiff's knee. Finally, the ALJ considered that when Plaintiff went to the emergency room in June 2017 complaining of knee pain, physical examination indicated normal muscle strength and range of motion with no tenderness or swelling. (AR 21, 326.)

The determination that a claimant's complaints are inconsistent with clinical evaluations

can satisfy the requirement of stating a clear and convincing reason for discrediting the claimant's testimony. Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 9th Cir. 1999). The ALJ properly considered this evidence in weighing Plaintiff's credibility. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

5. The ALJ Provided Clear and Convincing Reasons to Support the Credibility Finding

Plaintiff argues that the ALJ wrongly drew negative inferences from his non-compliance with pain medication, failure to seek other methods of treatment to alleviate pain, and his overall conservative treatment, but where the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. Burch, 400 F.3d at 679. The ALJ provided clear and convincing reasons that are supported by substantial evidence in the record to reject Plaintiff's symptom testimony.

**B.  The ALJ Properly Considered Plaintiff's Obesity in the Sequential Analysis**

Plaintiff contends that the ALJ erred by failing to consider his obesity throughout the sequential evaluation process. Specifically, Plaintiff argues that the ALJ failed to consider the potential effect of his obesity and the combined effects of his impairments when considering whether Plaintiff equaled the medical listing 1.02(A).

Here, the ALJ found that Plaintiff's obesity was a severe impairment at Step 2. (AR 19.)

At Step Three the ALJ considers if the claimant has an impairment, or combination of impairments that meet or equal a listed impairment. Burch, 400 F.3d at 679. "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001). However, the ALJ need not discuss the findings in any specific section of his opinion. Lewis, 236 F.3d at 513.

"To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). No matter how severe an impairment is, it does not qualify as equaling a listing where it manifests only some of the listing criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "If the claimant meets or equals one of the listed impairments, a conclusive presumption of disability applies." Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990).

Equivalence may be determined if the claimant has multiple impairments none of which meets the listing requirement, but which when viewed in the aggregate are equivalent to a listed impairment. Burch, 400 F.3d at 682. In determining if a claimant's combination of impairment equals a listing the ALJ must consider his symptoms in combination and cannot fragment them in evaluating their effects. Lewis, 236 F.3d at 513. However, "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch, 400 F.3d at 683 (quoting Lewis, 236 F.3d at 514.)

"To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's impairment." Tackett, 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526). "Medical equivalence must be based on medical findings." Tackett, 180 F.3d at 1100 (quoting 20 C.F.R. § 404.1526). "A generalized assertion of functional problems is not enough to establish disability at step three." Tackett, 180 F.3d at 1100. "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." Kennedy v. Colvin, 738 F.3d 1172, 1176 (9th Cir. 2013) (quoting Sullivan v. Zebley, 493 U.S. 521 (1990)).

> The [ALJ] considered Listing 1.02 major dysfunction of a joint. Listing 1.02 is characterized by gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion and findings on of [SIC] joint space narrowing

> bony destruction or ankylosis of the affected joints with involvement of one major peripheral weight-bearing joint resulting in inability to ambulate effectively or involvement of one major peripheral joint in each upper extremity resulting in inability to perform fine and gross movements effectively. The records do not reflect that the claimant has any listing-level limitations in the ability to ambulate. Although there is one notation of an abnormal gait, most other treatment notes do not indicate any mention of an abnormal gait or inability to ambulate. See [AR 316-323]. The claimant has not been prescribed an assistive device. His osteoarthritis is minimal. [AR 273]. Therefore this Listing is not met or equaled.

(AR 20.)

The regulations provide that it will be found that "an individual with obesity 'meets' the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing." Titles II & Xvi: Evaluation of Obesity, SSR 02-1P (S.S.A. Sept. 12, 2002). However, the Commissioner "will not make assumptions about the severity or functional effects of obesity combined with other impairments." Id.

Here, while Plaintiff argued that he met the equivalency requirements of medical listing 1.02 because the arthritis in his knees was a gross deformity and he has been having trouble ambulating for 12 months, he did not present evidence to establish medical equivalence. (AR 36.) As the ALJ found, the medical evidence in the record did not support a finding that Plaintiff had an abnormal gait or an inability to ambulate.

Further, the objective evidence in the record showed only mild medial compartmental narrowing and generally normal range of motion. (AR 273, 280, 281, 282, 283, 284, 326.) While Plaintiff has been diagnosed with genu varum deformity, Plaintiff presented no evidence that this is a gross anatomical deformity that results in an inability to ambulate effectively. Plaintiff testified that the genu varum deformity only caused him knee pain. (AR 41.) Substantial evidence supports the ALJ's finding that Plaintiff did not have a combination of impairments that medically equaled the listed impairment.

Finally, in determining Plaintiff's residual functional capacity, the ALJ considered Plaintiff's weight, including the impact on his ability to ambulate as well as his other body systems, which was the basis for limiting him to work requiring no more than a light level of

15

exertion. (AR 21.) Plaintiff argues that the ALJ should have considered the effect of his obesity on his breathing, level of fatigue, postural limitations, environmental restrictions and other applicable limitations. However, Plaintiff testified that his inability to work was due to his knee pain which makes him unable to sit for very long and he has no other physical problems. (AR 42-43.) Plaintiff has pointed to no evidence in the record that Plaintiff suffered from breathing problems, severe fatigue, postural or environmental limitations or any other impairments due to his obesity. The Court finds that the ALJ properly considered Plaintiff's obesity during the sequential evaluation process.

Plaintiff argues that he should be limited to sedentary activity based on his knee pain alone, however, the mere argument itself is insufficient to raise this issue on appeal. The failure to raise a substantive argument has waived any challenge to the ALJ's finding that he is capable of light work with the additionally stated limitations. Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014).

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in making an adverse credibility finding nor did the ALJ fail to consider Plaintiff's obesity during the sequential process. Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Michael T. Torres. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: __**January 7, 2020**__

UNITED STATES MAGISTRATE JUDGE